Good morning, your honors. May it please the court, my name is Elizabeth Krusek. I'm appearing on behalf of Mario Elenes. I will watch the clock and try to reserve about two minutes for rebuttal. The district court erred in denying Mr. Elenes' motion to suppress for two independent and equally fatal reasons. First, the pat-down that was conducted was second, even if you assume that the pat-down was supported by reasonable suspicion, it exceeded the constitutionally permissible scope of a Terry pat-down. And for either or both of those reasons, the court should vacate Mr. Elenes' conviction and remand for further proceedings. First, as to the issue of reasonable suspicion as to armed and dangerousness, the entire basis on which the officer provided his specific facts that he believed that Mr. Elenes was armed and dangerous were based on what he conceded was a misperception of what happened at the hotel. He believed that Mr. Elenes had pointed what he thought was a firearm, but it turned out to be a stick. When the officer approached the car, he realized before he ordered Mr. Elenes out of the car that what he had believed to be a firearm was actually a stick and was not, in fact, a firearm. And at that point, the entire analysis changes because any reasonable suspicion that he might have had up to that point has now been dispelled because what he believed that he saw, the whole reason that he pulled over the car, the whole reason that he Not the first time. The first time he sees a stick and he testified he thought it was a gun. He's correct. He does say that, yes. Now, the second time when he sees a stick in the car, does he absolutely know for sure that that was the same thing that he saw at the time? His testimony indicates that he does because the way it reads, and I acknowledge that his testimony isn't exactly a model of clarity, but the way it reads is he sees the object that he thought Mr. Elenes was holding. He does testify when he first saw it, he still wasn't sure. But then he says clearly and unequivocally before he ordered him out of the car, he realized that it was a stick. And that is really supported, that whole idea of this misperception is supported by the fact that the officer then does nothing with the stick. He doesn't impound it. He doesn't seize it in any way. He doesn't take pictures of it. There's nothing. And so it seems pretty clear from his testimony that whatever he might have thought at first, by the time he ordered Mr. Elenes out of the car, and certainly by the time he patted him down, he understood that Mr. Elenes had never had a firearm. Doesn't he also testify that what he perceived in the floorboard did not look like what he saw at the motel? Well, he says he thinks that that's what the object he was holding at the motel was, because it was sort of a long object with a flashlight. So there's no indication that... He testifies that it's apparently scared to other people to hold up their hands as if they were being threatened. It was a stick that had a flashlight on the end. So I'm not disputing what happened at the motel, that the officer genuinely believed that there was something going on at the hotel. Yes, he held up the stick. It appeared that two men held up their hands and backed away. That was the officer's testimony. Described as a club in the shape of a handgun? The officer actually said he believed it was a firearm, large part because of the length. The district court's order says it's about 20 inches in length. It's carved. And it had a flashlight on the end, which the officer understood to be typical add-ons. So it looked to him like it might have been a firearm. But he did say later that one of the reasons he didn't perform a high felony or a high-risk felony stop was because he still wasn't completely sure what had happened. So that indicates that while he did think that might have happened, that it wasn't entirely clear. And I don't think there's any dispute in the record that what he saw in the backseat of the car, he believed that that was the same thing that he had seen Mr. Elena's point at the motel. How do you respond to the district court's analysis that even if he had recognized the wooden stick as the purported weapon or what he had perceived to be reported to be a weapon wouldn't have changed the outcome because there may be a second, another weapon such as a knife or a handgun on this person? So I think that the district court, what that testimony that that ruling was predicated on was the officer saying, well, if someone has one firearm, they might have another one. Well, at the time that the pat-down was conducted, the officer knew that he didn't have a firearm and there were no other, I understand that the district court says this was a high crime area. He had seen these altercations. But at that point, that suspicion is dispelled because at that point, the officer doesn't believe there's been a crime. So the whole point of the pat-down is gone. He doesn't believe there was a crime, did you say? Yes. Right. Because the officer didn't do anything with the stick. Once he realizes that he hasn't pointed a firearm at the two men, the officer doesn't do anything behaving as though there's a crime at that point, if that makes sense. There's no indication that he believed once the firearm was out of the picture that a crime had been committed. And so I don't think the district court has enough once the dispassion has been dissipated as to the issue of the firearm. The mere fact that he had been in a high crime area, the fact that he had had these verbal altercations that now have a different analysis to them, I think changes everything. And now you have a traffic stop with multiple officers. Mr. Alanis's mother is present, is allowed to access the glove compartment and her purse. There's no testimony that Mr. Alanis makes any furtive movements, was reaching for anything, does any of the other things that generally uphold a pat-down. So I think once the firearm is out of the picture, I think that that alters the district court's analysis and makes it insufficient to support a conclusion of reasonable suspicion. I also want to briefly address the second issue is the scope of the pat-down itself. Even if you disagree with me that on the reasonable suspicion issue, I still contend that the pat-down exceeded its scope because the officer testified that he first felt the pouch and then shook the pouch. And his testimony at ER, I think it's 98, says he agrees it didn't feel like a gun. It didn't feel like a knife when he felt it with his fingers. The only thing that the officers are allowed to do in these pat-down is determine whether a weapon is present. They don't have to determine the contents of the pouch. And I think there was a lot of confusion in the district court's ruling about the officer's ability to determine the contents of the pouch. But that's not the question. The question is, could the officer determine whether a weapon was present? And he said that wasn't a gun or a knife. It didn't feel like that when he felt it with his fingers. At that point, it's unclear what else he would have been worried about. And so therefore, our contention is that the shaking of the pouch went too far. And then that of course led to the incriminating statements that Mr. Alanis made. I will save the remaining time for rebuttal if that's okay. May it please the court. My name is Ryan Powell. I'm an assistant U.S. attorney from Phoenix, Arizona. The officer in this case acted reasonably when he stopped and frisked the defendant. His frisk of the defendant was justified at its inception, and it was properly limited in scope. Additionally, the officer did not seize any evidence as a direct result of the frisk, but rather as a result of the defendant's subsequent statements. Accordingly, the officer did not violate the defendant's constitutional rights, and this court should affirm the district court's ruling. With respect to the officer's reasonable suspicion that the defendant was armed and dangerous before he conducted the frisk, a defense counsel makes the argument that the officer's reasonable he saw at the motel. The government's position is that whether the object was a firearm or whether, as it turned out, it was a spiked wooden club is immaterial to this court's analysis. And the reason is that either object is a weapon. This is not an instance where the officer realized the defendant had pointed something innocuous, like a roll of wrapping paper or something like that. It turned out not to be a firearm, but it turned out to be a wooden club with spikes going through the end with a flashlight mounted on the end of it. The officer witnessed when the defendant pointed this object at the two men at the motel. They reacted, and they were in very close proximity. They reacted as though it were a weapon. They raised their hands. They backed away. Additionally, it's important to remember the under Arizona law, your honor, it would qualify as a dangerous instrument because it was readily capable of causing either death or serious physical injury. Additionally, there's no question that under Terry analysis, a club constitutes a weapon. So whether the officer saw the defendant use a firearm or use a spiked wooden club at the motel, either way, the officer had a reasonable belief that the defendant had violated Arizona law by using a weapon. And that conclusion should end this court's inquiry for this court has held repeatedly that certain crimes are so frequently associated with the use of a weapon, that the mere suspicion a person has committed them justifies a pat down. Surely the crime of aggravated assault with a weapon is one of those crimes. And because the the defendant had committed that crime at the motel, the pat down in this case was justified at its inception with respects to the scope of the pat down the testimony that the defendant cites in his briefing, and also argued before the court at ER 98, with respect to what the officer felt with his fingers, it's important to look at the context in which that testimony occurred. That testimony occurred in the midst of the officer discussing when he shook the bag. The timeline is clear from the record that the officer first padded the bag, and that he subsequently shook the bag. When the officer testified that it didn't feel like a gun or didn't feel like a knife that could unfold. He was in the midst of talking about when he shook the bag. The immediately preceding questions were, when you shook the bag, you knew at that point there were bullets, correct? The officer said that he believed there to be bullets, and then he was asked, so you continue to manipulate the bag? And he answered, I believe I asked what was inside the bag, and that was the context of the conversation in which he said it did not feel like a gun, and it did not feel like a knife that could unfold. Additionally, with respect to that testimony, the officer did not say that it did not feel like there was a weapon in the bag. He said that it did not feel like a gun or a knife that could unfold. There are a litany of other weapons that it could have been. It could have been a fixed blade knife, a shank, a throwing star, a shiv, brass knuckles, and after that testimony on redirect, the officer was asked specifically, and this is at ER 104, before you shook the bag, did you know if the bag contained a weapon? And his answer was, I did not. With respect to the scope of the frisk, the district court made factual findings. Two of the factual findings are key for this argument, and based on the record, they're supported by the record, and they were not clear error on the district court's part. Those two findings were made at ER 15 and 16 in the district court's written ruling. The first factual finding is that the officer could not tell whether the defendant's leather pouch contained a weapon by patting it. That is a factual finding made by the district court. It is supported by the record. It is not clear error. The second factual finding the district court made is that as soon as the officer determined that the bag or the pouch did not contain a weapon, rather, as soon as he believed that it contained bullets, the officer stopped. He did not continue manipulating the bag. He did not continue with his frisk. Again, that factual finding by the district court is also supported by the record, and it is not clear error. Those two factual findings in combination are fatal to the defendant's argument that the frisk was for the government. The government asks you to affirm the district court's ruling. Thank you. Thank you, counsel. So first, to address the government's general argument that the evidence wasn't seized as a result of the frisk, that simply isn't supported by the facts. I think the record clearly shows that the only reason that the officer discovered the ammunition in the pouch was as a result of pat-down. He had no idea what was in the pouch, as he said, until the pat-down was conducted. And there's no question, based on the testimony that he provided, that the ammunition was discovered during and as a result of the pat-down. So that argument simply is not factually supported. But it wasn't seized at that point, was it? Well, it was seized. Truthfully, it's a little bit unclear. I think what he says at one point is, I felt it, shook the bag, asked the questions, and then there's some lack of clarity as to how much more of the pat-down he had to determine, had to continue until he asked one of the later questions and then took the pat-down. But the discovery of the ammunition was unquestionably as a part of the pat-down. And so I cited a number of cases about the fruit of the poisonous tree doctrine, which is familiar to the court, regarding the way in which it's discovered. And the government hasn't made any effort to show that any taint was purged. So my position is that argument simply doesn't hold water. With respect to the factual findings, one of the problems, the court relied on a statement in the defendant's motion that said that you couldn't determine the contents of the leather pouch without manipulating it in some way, which trial counsel contended was improper. And the court relied on that, saying that the bag, the officer was permitted to determine whether the bag contained a weapon. When that fact could not be determined as defendant's motion admits, then the officer was permitted to go forward. But that's not even what defendant's motion admits. Defendant's motion admits that you could not determine the contents of the bag, which the officer was never... Assuming your analysis is correct, didn't the officer also testify that he couldn't determine that there was not a weapon in there until after he shook the bag? At ER 104, the government is correct that he did testify, did you know that the bag contained a weapon before you shook it? And he said, no. But he also testified that it didn't feel like a gun or a knife when he felt it with his fingers. And in the context of this encounter, the court isn't allowed to speculate as to every single weapon that it could be. This officer was concerned about the presence of firearms and other larger weapons. And so there is no indication in the record of what other weapon the officer would have been concerned about. We've taken you over your time, but thank you very much for your argument. The matter is submitted.
judges: Nguyen, Owens, Vitaliano